**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

**READ FREELY ALABAMA;**

**ALABAMA LIBRARY ASSOCIATION;**

**SAMANTHA DIAMOND, on Behalf of Herself and as Next Friend of Her Minor Children J.D. and E.D.;**

**AMBER FREY; and**

**JOHN CRAIG and ALMUT HABOECK, as Next Friends of Their Minor Child C.C.**

**Plaintiffs,**

**v.** **No. 2:24-cv-00276-MHT-CWB**

**AUTAUGA-PRATTVILLE PUBLIC LIBRARY BOARD OF TRUSTEES,**

**Defendant.**

# FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Read Freely Alabama; Alabama Library Association; Samantha Diamond, on behalf of herself and as next friend of her minor children J.D. and E.D.; Amber Frey; and John Craig and Almut Haboeck, as next friends of their minor child C.C., by and through their undersigned counsel, and, as to the Alabama

Library Association and Read Freely Alabama, on behalf of their members, allege as follows:

**INTRODUCTION**

1. On February 8, 2024, the Autauga-Prattville Public Library Board of Trustees adopted a new Selection Criteria Policy controlling the Autauga-Prattville Public Library (APPL)'s acquisition, removal, and availability of library books and other material based on their content.

2. Under the February 2024 version of the Selection Criteria Policy, the library was no longer permitted to acquire any material (other than biology, anatomy, or religious texts) advertised for children aged 17 or younger with content including sexual conduct, sexual intercourse, sexual orientation, gender identity, and gender discordance.

3. The February 2024 version of the Selection Criteria Policy violated the First Amendment of the United States Constitution. It was overbroad. It discriminated on the basis of content. And it was vague. Plaintiffs, who include library card holders injured by the policies, a local grassroots organization of library supporters and patrons, and a statewide organization of librarians and library supporters, therefore filed the instant suit and asked this Court to invalidate that violation of the First Amendment, to declare the February 2024 Selection Criteria Policy unconstitutional and void, and to enjoin the Board from implementing or enforcing that policy.

4. Following the instant suit's filing, the Board revised the Selection Criteria Policy on June 24, 2024. The changes made to the Selection Criteria Policy in June 2024 do not cure its constitutional infirmities. As with its predecessor, the June 2024 version of the Selection Criteria Policy violates the First Amendment. And as with its predecessor, it is overbroad, vague, and restricts speech on the basis of content.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Court also independently has subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(3)–(4) because Plaintiffs seek to vindicate their federal constitutional rights under 42 U.S.C. § 1983.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b), as the sole defendant resides in this district, and a substantial part of the events giving rise to this claim have occurred and are occurring in this district.

7. Plaintiffs seek remedies in this action pursuant to 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §§ 1983 and 1988, and Federal Rule of Civil Procedure 65.

## PARTIES

8. Plaintiff **Read Freely Alabama** is a grassroots, volunteer-run membership organization comprising concerned citizens who oppose censorship in Alabama libraries. Read Freely Alabama's purpose and mission is to uphold the values of American democracy by fighting any censorship in Alabama's public libraries, and by advocating for inclusive library collections that accurately reflect the

diversity of the communities served by those libraries. Read Freely Alabama's membership includes more than 150 residents of Prattville and Autauga County, including more than forty patrons and library card holders of the Autauga-Prattville Public Library.

9. Plaintiff **Alabama Library Association (ALLA)** is a non-profit corporation formed to encourage and promote the welfare of libraries and professional interests of librarians in Alabama. ALLA has more than 275 active members throughout Alabama, including APPL library card holders. ALLA's mission is to provide leadership for the development, advocacy, and improvement of library and information services and to promote the profession of librarianship in order to enhance learning and ensure access to information for all.

10. Plaintiff **Samantha Diamond** brings this lawsuit as next friend of her minor children, **J.D.** and **E.D.**, and also on her own behalf. Ms. Diamond, J.D., and E.D. are all current APPL library card holders and frequently patronize APPL.

11. Ms. Diamond is a member of Read Freely Alabama.

12. Plaintiff **Amber Frey** is an APPL library card holder and frequent APPL patron.

13. Ms. Frey is a member of Read Freely Alabama.

14. Plaintiffs **John Craig** and **Almut Haboeck** bring this lawsuit as next friends of their minor child **C.C.** C.C. is a current APPL library card holder and regularly patronizes APPL. C.C. has also regularly volunteered at APPL, including through service on the Teen Advisory Board.

15. Defendant **Autauga-Prattville Public Library Board of Trustees** (the **Board**) is APPL's governing entity. The Board enacted the February 2024 version of the Selection Criteria Policy at issue in this lawsuit's original Complaint. On June 24, 2024, the Board voted to revise the February 2024 version of the Selection Criteria Policy (referred to herein, as revised, as the Selection Criteria Policy). The June 2024 iteration of the Library Policies for the Autauga-Prattville Public Library is attached as Exhibit A to this Supplemental Complaint. The Board claims the right to exercise control over all library material, including but not limited to books, movies, artwork, displays, and programming.[14] The Board also claims to exercise control over the weeding of APPL materials.[15] At all times relevant to the facts alleged in this Supplemental Complaint, the Board has operated under color of state law.

## FACTUAL ALLEGATIONS

### The February 2024 Version of the Selection Criteria Policy.

16. The Board enacts policies governing APPL's day-to-day operations. These policies include, but are not limited to, policies governing the acquisition and retention of library books and other materials.

17. On February 8, 2024, the Board unanimously adopted a new Selection Criteria Policy within its larger set of "Library Policies." The February 2024 iteration of those Library Policies for the Autauga-Prattville Public Library is attached as

---

[14] *See* Ex. A at 16–17.

[15] *See* Ex. A at 17.

Exhibit B to this Supplemental Complaint. The Library Policies assert that they "were prepared by the library director and board of trustees of the Autauga-Prattville Public Library," that upon their adoption they were (and remained until June 24, 2024) "the established operational policies of the Library," and that they "may be revised at any time by action of the Board."[3]

18. The February 2024 version of the Selection Criteria Policy stated: "For the avoidance of doubt, the library shall not purchase or otherwise acquire any material advertised for consumers ages 17 and under which contain content including, but not limited to, obscenity, sexual conduct, sexual intercourse, sexual orientation, gender identity, or gender discordance. Age-appropriate materials concerning biology, human anatomy, or religion are exempt from this rule."[4] The February 2024 version of the Selection Criteria Policy thus prevented the acquisition of books and other materials falling within its sweep.

19. The Selection Criteria Policy in place prior to February 2024 did not contain this language.[5]

20. The adoption of the February 2024 version of the Selection Criteria Policy occurred in conjunction with advocacy organizations' efforts to encourage the

---

[3] Ex. B at 2.

[4] Ex. B at 16.

[5] *See* Ex. C at 16. The Library Policies that were in effect prior to February 2024 are attached to this Supplemental Complaint as Exhibit C.

state government to enact similar policies. The Board developed that version of the Selection Criteria Policy in collaboration with a group called "Clean Up Alabama," which has advocated for content-based restrictions in public libraries throughout Alabama.

21. On or about April 22, 2024, Ray Boles—who serves as the Board's chair—told Board member Gloria Kuykendall that the Board had adopted its "really far right" policy as a pretense for the state to pass new rules designed ostensibly to "move more to the center."[6]

22. Mr. Boles told Ms. Kuykendall: "This is not about this library, it's about the entire state," and that by enacting its "far right" policy, the Board would "allow the state to go even further than what they would want."[7]

**Rule Changes at the Alabama Public Library Service.**

23. On May 16, 2024, the Alabama Public Library Service—a state agency charged with disbursing state funds to public libraries—voted to adopt a set of rule changes requiring public libraries, among other things, to approve written guidelines governing the acquisition of material advertised for consumers under the age of 18 which contain obscenity, sexually explicit or other material deemed inappropriate for

[6] Jacob Holmes, *Prattville Library Board Chair: New Policy is 'Far Right' So State Could 'Move to Center,'* Alabama Political Reporter (Apr. 29, 2024), https://www.alreporter.com/2024/04/29/prattville-library-board-chair-new-policy-is-far-right-so-state-could-move-to-center/.

[7] *Id.*

children or youth (exempting age-appropriate materials regarding religion, history, biology, or human anatomy).

24. The certification of APLS's rules changes, setting forth the new code provisions, is attached to this Supplemental Complaint as Exhibit D.

25. On June 18, 2024, APLS provided library directors throughout the state with guidance on these proposed rule changes (attached to this Supplemental Complaint as Exhibit E).

26. In this guidance, APLS states that "APLS cannot determine what is appropriate or inappropriate or where items should be shelved." Rather, libraries "and [their] board[s] must decide what is appropriate based on your community's needs."[8] Accordingly, policies "are subjective to each community and board."[9]

27. APLS' guidance also directs libraries to approach their existing children's and young adult collections by evaluating and reviewing them "according to the CREW method,"[10] while "keep[ing] in mind the terms your library has selected to define sexually explicit and obscene material."[11]

---

[8] *See* Ex. E at 2.

[9] *Id.*

[10] "CREW" presumably refers to "Continuous Review, Evaluation, and Weeding," a commonly employed strategy employed by librarians to cull no longer useful materials from their collections. *See generally* Jeanette Larson, *CREW: A Weeding Manual for Modern Libraries*, Texas State Library (2012), https://www.tsl.texas.gov/sites/default/files/public/tslac/ld/ld/pubs/crew/crewmethod12.pdf.

[11] Ex. E at 3.

28. On June 18, 2024, the director of APLS also shared with librarians throughout the state a copy of the definitions of "sexually explicit" and "inappropriate for minors" that had been adopted by the Ozark Dale library, and which simply incorporated various definitions pulled from the Alabama and federal criminal codes. The director noted in her cover e-mail: "APLS is not requiring you to use this information in your policies. It is informational only." The Ozark Dale policy is attached as Exhibit F.

**The June 2024 Version of the Selection Criteria Policy.**

29. After this lawsuit was filed, and after APLS issued the guidance described above, the Board changed the Selection Criteria Policy's wording on June 24, 2024.[12]

30. As with the February 2024 version of the Library Policies, the June 2024 version of the Library Policies "were prepared by the library director and board of trustees of the Autauga-Prattville Public Library;" they "are the established operational policies of the Library," and they "may be revised at any time by action of the Board."[13]

31. The June 2024 version of the Selection Criteria Policy provides: "[T]he Library staff shall not purchase or otherwise acquire any material advertised for consumers under the age of 18 which includes obscene or sexually explicit content (as those terms are defined in state or federal law) or which is otherwise deemed

---

[12] *See* Ex. A at 16–18.

[13] Ex. A at 2.

inappropriate for children or youth by the Library Director in the exercise of common sense and professional judgment, and in compliance with any applicable laws and any relevant standards, guidance, or policies adopted by the Board of Trustees."[14]

32. The June 2024 version of the Selection Criteria Policy exempts from this prohibition "[a]ge-appropriate materials regarding religion, history, biology, or human anatomy . . . provided their procurement, possession, distribution, display, and public dissemination would be lawful" (even if immunity for public libraries did not apply).[15]

33. The June 2024 version of the Selection Criteria Policy does not identify any specific provision of federal or state law for its definition of "obscene or sexually explicit content."

34. The June 2024 version of the Selection Criteria Policy does not itself define "inappropriate for children or youth."

**The June 2024 Version of the Selection Criteria Policy Continues the February 2024 Version.**

35. As did the February 2024 version of the Selection Criteria Policy, the June 2024 version of the Selection Criteria Policy governs not only the materials APPL acquires, but also those it retains or removes.

36. First, the June 2024 version of the Selection Criteria Policy, like its predecessor, is incorporated into APPL's Weeding Policy. Weeding is a common

[14] Ex. A at 17.

[15] *Id.*

library practice of regularly reviewing and evaluating books and other library materials to determine if they should remain in the collection. Common factors for weeding—reflected in APPL's policy[16]—include whether materials are factually accurate, the physical condition of the material, the enduring relevance of the material, and the ready availability of the material elsewhere. APPL's June 2024 version of the Selection Criteria Policy (as did the prior version), however, goes further by providing that the "[g]eneral criteria for weeding" include materials that are "not aligned with the selection criteria," and that librarians "should consider the selection criteria . . . when deciding how much and how often to weed."[17]

37. In other words, the February 2024 version of the Selection Criteria Policy provided that covered materials in APPL's collection were subject to removal through the incorporation of the Selection Criteria Policy into the Weeding Policy. By the same token, the June 2024 version of the Selection Criteria Policy provides that covered materials in APPL's collection are subject to removal from APPL's collection through the incorporation of the Selection Criteria Policy into the Weeding Policy. Neither policy empowered the librarian with discretion to ignore the Selection Criteria Policy in weeding decisions.

---

[16] Ex. A at 18.

[17] *Id.*

38. The weeding policies in effect prior to February 2024 did not refer to the selection criteria.[18] In other words, the weeding policies in effect prior to February 2024 did not call for weeding based on specific categories of content.

39. The current Weeding Policy (which incorporates the June 2024 version of the Selection Criteria Policy) also gives the Board "the right to exercise discretion over weeding over materials." The Weeding Policy itself provides no factors to govern that discretion.[19]

40. Second, the June 2024 version of the Selection Criteria Policy, like the February 2024 version, provides that when the inclusion or removal of a particular piece of library material is challenged (hereinafter "challenge process"), a designated review committee will review the challenged materials for "the extent to which the material meets the selection criteria" in developing a written recommendation for the Director and the Board's final determination.[20] During the pendency of a review, materials that have been challenged will be removed from circulation.[21] The June 2024 version of the Selection Criteria Policy additionally restricts the time by which someone may challenge the removal of a book to thirty days.[22]

---

[18] Ex. C at 16.

[19] Ex. A at 18.

[20] Ex. A at 36–37.

[21] Ex. A at 36.

[22] *Id.*

41. Following the enactment of the February 2024 version of the Selection Criteria Policy, library materials falling within its sweep were quickly challenged[23] and/or removed from circulation. For example, Ms. Frey had planned to check out *Camp* by Lev A.C. Rosen, a novel about a camp for queer teens, which was in APPL's collection, and had reserved that book through the library. But that book was removed from her reserve list, was no longer listed in APPL's collection in the online catalogue as of the date of the filing of the original complaint, and remains missing from the online catalogue. The same thing happened with *Looking for Alaska* by John Green, which contains sexual conduct between teenagers, and which Ms. Frey had also reserved at APPL. J.D. had previously checked out and enjoyed *Rabbit Chase* by Elizabeth LaPensée, a graphic novel about a non-binary Anishinaabe middle-schooler—but that book, too, no longer appeared in APPL's online catalogue as of the filing of the original complaint, and remains missing. And two books by Nico Medina—*What was Stonewall?* and *What Is the AIDS Crisis?*—that Ms. Diamond planned to check out to supplement her homeschool curriculum were also removed from the APPL online catalogue as of the filing of the original complaint, and have not been restored.

42. Since the original complaint was filed, additional books have been removed from APPL's online catalogue. For example, the first book in the *Sir Callie*

---

[23] Jacob Holmes, *Prattville Library Board committee urges director to move books under new policies*, Alabama Political Reporter (Mar. 11, 2024), https://www.alreporter.com/2024/03/11/prattville-library-board-committee-urges-director-to-move-books-under-new-policies/.

series by Esme Symes-Smith, previously read by E.D. and J.D., is now missing from APPL's online catalogue. So too are all books by Alice Oseman, an author enjoyed by Ms. Frey, as well as *The Hate U Give* by Angie Thomas. Plaintiffs expect that, following the enactment of the June 2024 version of the Selection Criteria Policy, books that fall within the scope of that Policy will continue to be removed from APPL.

**The Standards Resolution.**

43. On the same day that the Board enacted the June 2024 version of the Selection Criteria Policy, the Board also adopted a Resolution "Concerning Standards for Deciding Appeals of Requests for Reconsideration Based on the Selection Policy" (hereinafter "Standards Resolution"). The Standards Resolution is attached to this Supplemental Complaint as Exhibit G.

44. The Standards Resolution operates in conjunction with the challenge process, which (as alleged above) incorporates the June 2024 version of the Selection Criteria Policy.

45. The Standards Resolution provides that "the Library Director has ultimate responsibility, subject to the oversight of the Board of Trustees . . ., for collection development," and that "the Library Director has broad discretion to curate the collection and the responsibility to protect minors from material deemed inappropriate for children or youth."[24]

46. The Standards Resolution further provides that when a patron appeals "[t]he Library Director's decision to remove material from the collection which is

[24] Ex. G at 1.

advertised for consumers under the age of 18 and which he or she deems inappropriate for children or youth," the Board shall overrule the removal only if the challenged book or material does not contain "[c]ontent that is harmful to minors, as defined in state or federal law;" "[g]raphic descriptions, illustrations, or other representations of sexual conduct, as defined in state or federal law;" "[a] mature theme or themes concerning issues of sexuality, sexual orientation, sexual abuse, or transgender identity;" or "[c]ontent presented in a manner that glorifies or seriously promotes or encourages illicit drug use; alcohol or tobacco use by minors; overt racial or ethnic animus; sexual harassment or discrimination; xenophobia; homophobia, transphobia, or any other animus based on sexual orientation or gender identity; promiscuity; teen pregnancy; physical or sexual abuse, pedophilia, polygamy, or any other criminal activity or conduct; or a pattern of behavior characterizing a recognized mental health condition."[25]

47. The Standards Resolution effectively defines material that the Board has determined is "inappropriate for children or youth" under the Selection Criteria Policy, thereby governing (as a "standard[], guidance[], or polic[y] adopted by the Board") the Library Director's decisions regarding the purchase and retention of materials. In effect, the Board moved part of the substance of the February 2024 version of the Selection Criteria Policy into a separate document, but that document still governs selection decisions.

[25] Ex. G at 1–2.

48. The Standards Resolution further provides that the Board may overrule "[t]he Library Director's decision to keep challenged material in the collection" if "the material satisfies at least one of the standards enumerated above and the material is not moved to the adult section of the library and appropriately labeled or flagged for patrons 18 years and older."[26]

49. Following the Board's adoption of the June 2024 version of the Selection Criteria Policy, Clean Up Alabama's founder and executive director wrote on a Moms for Liberty private Facebook group concerning the revisions: "Make sure to note that we did not back down, exact same still no gender identity and sexual orientation but presented differently to get a lawsuit dismissal. We have still won and books have been removed from the library collection and will not be acquired from this point further."

**Plaintiffs' Injuries.**

50. The Selection Criteria Policy is currently in effect at APPL. It has injured and continues to injure the Plaintiffs.

51. As was the case under the February 2024 version of the Selection Criteria Policy, the June 2024 version's vagueness has resulted and will continue to result in confusion and uncertainty. The Selection Criteria Policy, by and through other Library Policies (including the challenge process, the weeding process, the acquisition process, and the Standards Resolution) will be applied inconsistently, and is likely to lead to removals of books and materials with LGBTQ+ characters and

[26] Ex. G at 2.

themes. Plaintiffs further expect that, because of the vagueness of the Policies, more books and other material will be deemed to fall within the scope of the Selection Criteria Policy than if the Policy had been drafted more specifically. These expectations are informed by removals of books and other library materials under both the February and June versions of the Selection Criteria Policy.

52. Read Freely Alabama members (including those described below) have been injured because they plan to read and check out APPL library materials that are advertised for readers under 18 years of age and that contain content that is sexually explicit or that the Library Director is likely to deem "inappropriate for children or youth" because they contain a mature theme or themes concerning sexuality, sexual orientation, or transgender identity, or present content in a manner that, in the view of the Library Director or Board, "glorifies or seriously promotes or encourages" alcohol and tobacco use by minors, overt racial or ethnic animus, homophobia, transphobia, promiscuity, criminal activity or conduct, or a pattern of behavior characterizing a recognized mental health condition. The Selection Criteria Policy will result in APPL removing (or declining to acquire in the first place) material that Read Freely Alabama members plan to read and check out, were it available. Read Freely Alabama members' plans to check out such material were also stymied by the previous version of the Selection Criteria Policy, and these injuries would continue were that previous version to be reenacted.

53. Ms. Diamond, J.D., and E.D. regularly check out and plan to continue checking out material from APPL, including material advertised for readers under

18 years of age with content that is sexually explicit or that the Library Director is likely to deem "inappropriate for children or youth" because they contain a mature theme or themes concerning sexuality, sexual orientation, or transgender identity, or present content in a manner that, in the view of the Library Director or Board, "glorifies or seriously promotes or encourages" alcohol and tobacco use by minors, overt racial animus, homophobia, transphobia, promiscuity, criminal activity or conduct, and a pattern of behavior characterizing a recognized mental health condition. Ms. Diamond, E.D., and J.D. have regularly gone to APPL about once a month to check out books, and plan to continue that pattern of checking out books that fall within the Selection Criteria Policy approximately once a month (or even more frequently), if such books remain available. The Selection Criteria Policy will result in APPL removing material that Ms. Diamond, J.D., and E.D. plan to read and check out, if it were available, as well as preventing Ms. Diamond, J.D., and E.D. from reading and checking out materials that APPL will decline to acquire because of the Selection Criteria Policy. Ms. Diamond, J.D., and E.D.'s plans to check out such material were also stymied by the previous version of the Selection Criteria Policy, and these injuries would continue were that previous version to be reenacted.

54. J.D. and E.D. enjoy and plan to continue checking out and reading middle-grade books featuring LGBTQ+ characters (that is, books containing themes concerning sexual orientation and transgender identity), such as the *Sir Callie* series by Esme Symes-Smith (should they be made available once more) and *Dragon Pearl* by Yoon Ha Lee. Ms. Diamond herself also enjoys and plans to continue checking out

books marketed for readers under 18 years of age, including books that contain content that is sexually explicit, or that APPL is likely to deem "inappropriate for children or youth" because they contain a mature theme or themes concerning sexuality, sexual orientation, or transgender identity, or present content in a manner that, in the view of the Library Director or Board, "glorifies or seriously promotes or encourages" alcohol or tobacco use by minors, overt racial animus, homophobia, transphobia, promiscuity, criminal activity or conduct; or a pattern of behavior characterizing a recognized mental health condition. For example, Ms. Diamond has recently read and enjoyed *The Fault in Our Stars* by John Green, which features two characters who fall in love and have a sexual relationship, as well as *Green* by Alex Gino, about a non-binary middle-schooler who fights for gender-free casting in their school play.

55. Ms. Diamond reads these young adult novels for leisure and, sometimes, to preview them before deciding if they are a good fit for her children to read. She also routinely relies on APPL to supplement her curriculum as she homeschools J.D. and E.D. For example, she plans to check out age-appropriate books about Stonewall (a gay bar in New York City that was the site of a seminal protest in the early days of the LGBTQ+ rights movement) and age-appropriate books about the Black civil rights movement and racism's lasting legacy to supplement her history curriculum if they are available. Such materials, which Ms. Diamond plans to continue checking out, fall within the scope of the Selection Criteria Policy, which will limit Ms. Diamond's ability to provide a well-rounded homeschool education for her children.

Because Ms. Diamond cannot afford to buy all of the supplemental books her family typically gets from the library for their history lessons, if those materials are not in the library, the quality of their history unit studies will have to suffer their detrimental absence.[27] Ms. Diamond also relies on library books to facilitate age-appropriate lessons about puberty, sexual education, and health, and plans to check out such books in the coming weeks and months if they are available. But a book she previously planned to check out and read about these topics—*Everything You Always Wanted to Know About Puberty—and Shouldn't Learn on TikTok: For Curious Girls* by Gemma Hong—was pulled from APPL's shelves as of the filing of the original Complaint and remains absent from APPL's online catalogue as of this filing.

56. Ms. Frey also regularly checks out and plans to continue checking out from APPL material that is advertised for readers under 18 years of age and that contains content that is sexually explicit or that the Library Director is likely to deem "inappropriate for children or youth" because they contain a mature theme or themes concerning sexuality, sexual orientation, or transgender identity, or present content in a manner that, in the view of the Library Director or Board, "glorifies or seriously promotes or encourages" a pattern of behavior characterizing overt racial animus, criminal activity or conduct, or a recognized mental health condition. Ms. Frey has

[27] Although the June 2024 Selection Criteria Policy purports to have an exception for history books, several titles Ms. Diamond planned to check out relating to the LGBTQ+ rights movement were removed from the APPL catalogue during the time she prepared to file the original complaint, and have not yet been replaced. In any event, the exception vests unfettered discretion in the APPL director—and not a parent—to determine whether a history book is "age-appropriate."

regularly gone to APPL to check out books and plans to continue going to the library and checking out books that fall within the Selection Criteria Policy approximately every several weeks, if such books remain available. The Selection Criteria Policy will result in APPL removing material that Ms. Frey plans to read and check out, if it were available, as well as preventing Ms. Frey from reading and checking out materials that APPL will decline to acquire because of the Selection Criteria Policy. (Ms. Frey's plans to check out such material were also stymied by the previous version of the Selection Criteria Policy, and these injuries would continue were that previous version to be reenacted.)

57. For example, Ms. Frey often checks out books for both herself and her children. Ms. Frey sometimes does this so she can read the book first to determine if her children are old enough to read it. Ms. Frey also personally enjoys reading young adult novels for leisure, including books featuring LGBTQ+ characters. She enjoys the *Heartstopper* series by Alice Oseman (featuring two teen boys falling in love) and plans to continue checking out books in that series as they become available, as well as other books that would fall within the scope of the Selection Criteria Policy. But in between the filing of the original complaint and this supplemental complaint, Alice Oseman's books have been removed from APPL's online catalogue—on information and belief, because of the Selection Criteria Policy. Ms. Frey also planned to check out *Camp* by Lev A.C. Rosen, but it was removed from the library collection during the time she was preparing to file this lawsuit and remains absent from APPL's online catalogue as of this filing.

58. When Ms. Frey is unable to access a book through the library, she is sometimes forced to expend money to purchase it in order to read it. Because books from her family's summer reading list are no longer available at APPL, she has had to spend money to buy them. Her family has fallen behind on their summer reading plans because of that expense.

59. C.C. also regularly visits APPL to peruse and check out material that is advertised for readers under 18 years of age that contains content that is sexually explicit or that the Library Director is likely to deem "inappropriate for children or youth" because they contain a mature theme or themes concerning sexuality, sexual orientation, or transgender identity, or present content in a manner that, in the view of the Library Director or Board, "glorifies or seriously promotes" or encourages illicit drug use, criminal activity, and a pattern of behavior characterizing a recognized mental health condition. The Selection Criteria Policy will result in APPL removing material that C.C. plans to read and check out, if it were available, as well as preventing C.C. from reading and checking out materials that APPL will decline to acquire because of the Selection Criteria Policy.

60. For example, C.C. has checked out several times mangas from the series *Ranma ½*, which features a teenager who has an accident that curses him to become a girl when exposed to cold water, and a boy when exposed to hot water. C.C. has also planned to check out *They Both Die at the End* by Adam Silvera, a love story featuring two teen boys, but that book is no longer available at APPL. C.C. plans to continue checking out books with similar themes if they remain available. C.C.'s

plans to check out such material were also stymied by the previous version of the Selection Criteria Policy, and these injuries would continue were that previous version to be reenacted.

61. ALLA members have been injured by the Selection Criteria Policy because they plan to read and check out APPL library materials that are advertised for readers under 18 years of age and that contain content that the Library Director is likely to deem "inappropriate for children or youth" because they contain a mature theme or themes concerning sexuality, sexual orientation, or transgender identity, or present content in a manner that, in the view of the Library Director or Board, "glorifies or seriously promotes or encourages" overt racial or ethnic animus, sexual harassment or discrimination, or a pattern of behavior characterizing a recognized mental health condition.

62. For example, ALLA member and APPL library card holder Jessica Hayes has checked out and plans to continue checking out books for her four-year-old son that are advertised for readers aged 17 and under and feature characters with different kinds of families, including LGBTQ+ characters, and describe the experience of being in those families. Ms. Hayes also plans to check out children's books related to mental health conditions such as depression, ADHD, and anxiety. Ms. Hayes plans to go to the library approximately every week, and check out books with this content if they remain available. The Selection Criteria Policy will result in APPL removing material that Ms. Hayes plans to read and check out, if it were available, as well as preventing Ms. Hayes from reading and checking out materials

that APPL will decline to acquire because of the Selection Criteria Policy. Ms. Hayes's plans to check out such material were also stymied by the previous version of the Selection Criteria Policy, and these injuries would continue were that previous version to be reenacted.

63. ALLA has also been forced to divert organizational resources away from its mission due to the events described in this Complaint. For example, ALLA has used its resources to review the February 2024 version of the Selection Criteria Policy and the June version, inform members about (both versions of) the Policy's requirements, address questions from members outside of Prattville about (both versions of) the Policy, and monitor (both versions of) the Policy's implementation—work that ALLA anticipates will continue. To do so, ALLA has had to divert resources away from goals such as advocating for the improvement of library services and increased library funding at the state level. The February 2024 Selection Criteria Policy's adoption also required ALLA to divert time and resources away from planning its annual conference (one of ALLA's largest sources of annual revenue), resulting in a delayed opening in registration, fewer participants, and less income.

64. Plaintiffs' injuries flow from the Board's enactment of the February 2024 version of the Selection Criteria Policy and the June 2024 version of the Selection Criteria Policy. Should the Selection Criteria Policy be voided, those injuries would cease.

## CLAIMS FOR RELIEF

## COUNT I

### Section 1983: First Amendment as to Minors (Overbreadth)

65. Plaintiffs restate and re-allege paragraphs 1 through 64 above as if fully set forth herein. All references herein to the Selection Criteria Policy include collectively the June 2024 version of the Selection Criteria Policy in and of itself; its incorporation into the Library Policies' Weeding Policy and challenge process; and the Standards Resolution.

66. The Selection Criteria Policy, and the version that preceded it, are facially overbroad in violation of the First Amendment because they restrict minors' access to a substantial amount of constitutionally protected material that is not obscene. This includes the minors on whose behalf the Plaintiffs state this claim.

67. Specifically, the Selection Criteria Policy (and the version that preceded it) unconstitutionally interferes with minors' right to check out and read books and other material (including but not necessarily limited to their right to receive information) protected by the First Amendment, including material that is not obscene as to minors. The policies also interfere with older, more mature minors' right to read and check out material (including but not necessarily limited to their right to receive information) that is not obscene as to them, but that might be inappropriate for younger minors.

68. The Selection Criteria Policy (and the version that preceded it) likewise prevents minors from accessing constitutionally protected books and other material by requiring their removal from and preventing their acquisition for the collection.

69. The Board's enactment of both the Selection Criteria Policy and its predecessor violates Title 42, Section 1983 of the United States Code.

70. Such violation has injured and continues to injure the minor children on whose behalf the Plaintiffs state this claim.

**COUNT II**

**Section 1983: First Amendment as to Adults**
**(Overbreadth)**

71. Plaintiffs restate and re-allege paragraphs 1 through 70 above as if fully set forth herein.

72. The Selection Criteria Policy, and the version that preceded it, are facially overbroad in violation of the First Amendment because they restrict adults' access to a substantial amount of constitutionally protected material that is not obscene. This includes the individual Plaintiffs and the members of Read Freely Alabama and ALLA who hold APPL library cards.

73. Specifically, the Selection Criteria Policy (and the version that preceded it) unconstitutionally interferes with adults' right to check out and read non-obscene material (including but not limited to the right to receive information) protected by the First Amendment.

74. The Selection Criteria Policy (and the version that preceded it) prevents APPL from acquiring any material falling under its restriction that is advertised for

children under 18 years of age. As a result, any book marketed as a Young Adult (or YA) book that falls within the sweep of the Selection Criteria Policy cannot be acquired at all—even to be housed in the adult section of the library.

75. The Selection Criteria Policy (and the version that preceded it) likewise prevents adults from accessing constitutionally protected books and other material by requiring their removal from the collection.

76. The Board's enactment of both the Selection Criteria Policy and its predecessor violates Title 42, Section 1983 of the United States Code.

77. Such violation has injured and continues to injure the Plaintiffs.

**COUNT III**

**Section 1983: First Amendment as to Minors**
**(Content-Based Discrimination)**

78. Plaintiffs restate and re-allege paragraphs 1 through 77 above as if fully set forth herein.

79. The Selection Criteria Policy (and the version that preceded it) facially discriminates on the basis of content and thereby restricts minors' access to constitutionally protected material that is not obscene. This includes the minors on whose behalf the Plaintiffs state this claim.

80. Specifically, the Selection Criteria Policy (and the version that preceded it) unconstitutionally interferes with minors' right to check out and read library material (including but not necessarily limited to their right to receive information) protected by the First Amendment, through the imposition of restrictions based on content broader than obscenity.

81. The Selection Criteria Policy likewise prevents minors from accessing constitutionally protected books and other material by requiring their removal from and preventing their acquisition for the collection.

82. The Board's enactment of both the Selection Criteria Policy and its predecessor violates Title 42, Section 1983 of the United States Code.

83. Such violation has injured and continues to injure the minor children on whose behalf the Plaintiffs state this claim.

## COUNT IV

### Section 1983: First Amendment as to Adults (Content-Based Discrimination)

84. Plaintiffs restate and re-allege paragraphs 1 through 83 above as if fully set forth herein.

85. The Selection Criteria Policy (and the version that preceded it) facially discriminates on the basis of content and thereby restricts adults' access to constitutionally protected material that is not obscene. This includes the individual Plaintiffs and the members of Read Freely Alabama and ALLA who hold APPL library cards.

86. Specifically, the Selection Criteria Policy (and the version that preceded it) unconstitutionally interferes with adults' right to check out and read material (including but not necessarily limited to their right to receive information) protected by the First Amendment, through the imposition of restrictions based on content that are broader than obscenity.

87. The Selection Criteria Policy (and the version that preceded it) likewise prevents adults from accessing constitutionally protected books and other material by requiring their removal from and preventing their acquisition for the collection.

88. The Board's enactment of both the Selection Criteria Policy and its predecessor violates Title 42, Section 1983 of the United States Code.

89. Such violation has injured and continues to injure the Plaintiffs.

## COUNT V

### Section 1983: Fourteenth Amendment Due Process (Vagueness)

90. Plaintiffs restate and re-allege paragraphs 1 through 89 above as if fully set forth herein.

91. The Selection Criteria Policy (and the version that preceded it) deprives the Plaintiffs of their Fourteenth Amendment right to Due Process because of its vagueness.

92. Specifically, the Selection Criteria Policy (and the version that preceded it) fails to provide fair notice of what is prohibited to a person of ordinary intelligence, and is so standardless that it encourages discriminatory enforcement. This policy necessarily requires people of common intelligence to guess at its meaning.

93. The Board's enactment of both the Selection Criteria Policy and its predecessor violates Title 42, Section 1983 of the United States Code.

94. Such violation has injured and continues to injure the Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter a preliminary and permanent injunction enjoining the Board from enforcing the June 2024 version of the Selection Criteria Policy or the February 2024 version of the Selection Criteria Policy;

b. Enter a preliminary and permanent injunction enjoining the Board from further enacting policies that violate the First Amendment in substantial similarity to the Selection Criteria Policy;

c. Enter a declaratory judgment that the June 2024 version of the Selection Criteria Policy and the February 2024 version of the Selection Criteria Policy are unconstitutional, void, and of no effect;

d. Award Plaintiffs their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

e. Issue such other relief as the Court deems proper.

Dated: August 8, 2024

Respectfully submitted,

_*/s/ Jon C. Goldfarb*_______________________

Jon C. Goldfarb (AL Bar No. ASB-5401-F58J)
L. William Smith (AL Bar No. ASB-8660-A61S)
Wiggins, Childs, Pantazis, Fisher, & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205) 314-0500
jcg@wigginschilds.com
wsmith@wigginschilds.com

Will Bardwell* (MS Bar No. 102910)
Jessica Anne Morton* (DC Bar No. 1032316)
Robin F. Thurston* (DC Bar No. 1531399)
Democracy Forward Foundation

P.O. Box 34553
Washington, DC 20043
(202) 448-9090
wbardwell@democracyforward.org
jmorton@democracyforward.org
rthurston@democracyforward.org

*admitted pro hac vice

*Counsel for Plaintiffs*