**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| READ FREELY ALABAMA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-00276-MHT-CWB |
| | ) | |
| AUTAUGA-PRATTVILLE PUBLIC LIBRARY BOARD OF TRUSTEES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**
**FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

Defendant Autauga-Prattville Public Library Board of Trustees ("the Board") submits this brief in support of its Motion to Dismiss all claims from the Plaintiffs' First Amended and Supplemental Complaint (the "Amended Complaint"), Am. Compl., Doc. 26, challenging the constitutionality of certain policies of the Board. As to policies of the Board that are no longer in effect (collectively, the "February 2024 Policies"), the claims are moot. As to the Board's new policies (collectively, the "June 2024 Policies"), the claims are not ripe for adjudication. And as to both sets of policies, the Plaintiffs lack standing. For these reasons, the Court should dismiss all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1).

## TABLE OF CONTENTS

BACKGROUND .......... 3

I. The Plaintiffs' Claims .......... 3

II. The Board's new policies are materially different from the previous policies. 3

A. The new Selection Criteria conforms to the APLS's rule. .......... 4

B. The new Reconsideration Policy and Standards Resolution establish a meaningful administrative process for the Plaintiffs to challenge the removal of books and other material, but which they have not utilized. .......... 6

STANDARD OF REVIEW .......... 8

ARGUMENT .......... 9

I. The Plaintiffs' claims as to the February 2024 Policies are moot. .......... 10

II. The Plaintiffs' claims as to the June 2024 Policies are not ripe. .......... 13

III. The Plaintiffs lack standing .......... 16

A. The injury is not sufficiently concrete to confer standing. .......... 18

B. The injury is not sufficiently "actual or imminent" to confer standing. .......... 20

CONCLUSION .......... 23

## BACKGROUND

The Plaintiffs' Amended Complaint, like their original Complaint, states purely facial challenges to certain policies of the Board governing the curation of the library's collection. Doc. 26 ¶¶ 65-94. Specifically, the Plaintiffs allege that the policies, themselves (both the previous policies and the new, superseding policies) are "overbroad, vague, and restrict[] speech on the basis of content." Doc. 26 ¶ 4.

### I. The Plaintiffs' Claims

The Plaintiffs bring this Section 1983 lawsuit challenging the constitutionality of the June 2024 Policies, as well as the February 2024 Policies (which have been superseded and are no longer in effect). In Counts I through IV, the Amended Complaint avers that both policies violate the First Amendment in that they are "facially overbroad" (Count I as to minors and Count II as to adults) and they "facially discriminate[] on the basis of content" (Count III as to minors and Count IV as to adults) and thereby impermissibly restrict the Plaintiffs' access to material they claim a constitutional right to obtain from the library. Doc. 26 ¶¶ 65-89. They also allege that the policies are unconstitutionally vague in violation of the Fourteenth Amendment. Id. ¶ 90-94 (Count V).

### II. The Board's new policies are materially different from the previous policies.

The Plaintiffs filed their Amended Complaint because the set of policies they attacked in their original Complaint (the February 2024 Policies) have been rescinded and superseded by a new set of policies. On June 24, 2024, the Board adopted this new set of policies in response to an administrative rule change by the Alabama

Public Library Service (the "APLS"), the state agency that distributes state funding to local public libraries. Doc. 26 ¶¶ 23-29 and Ex. D. The APLS's amended rule conditions a local library's state funding its adoption of very specific policies, including "selection criteria for minors and how they are safeguarded from sexually explicit or other material deemed inappropriate for children or youth." Ala. Admin. Code r. 520-2-2-.03; Doc. 26, Ex. D. Accordingly, the Board's June 2024 Policies provide that "[t]he Library staff shall develop and manage the collection in compliance with the administrative rules of the Alabama Public Library Service to ensure continued eligibility for state aid and to provide a safe space for all patrons, especially children and youth." Doc. 26, Ex. A at 17.

In adopting the June 2024 Policies, the Board didn't just change the wording of the February 2024 Policies. It approved materially different selection criteria conforming to the APLS rule (the "Selection Criteria"), established administrative procedures for aggrieved patrons, including the Plaintiffs, to petition for the return of a removed book to the library's shelves (the "Reconsideration Policy"), and adopted clear definitions and objective standards for the implementation of the policies.

***A. The new Selection Criteria conforms to the APLS's rule.***

The Board has eliminated all content-based restrictions from the Selection Criteria, except for those necessary to conform the Board's criteria to the APLS rule: "obscene" and "sexually explicit" material advertised for minors. *Compare* Doc. 26, Ex. A at 17 (the Selection Criteria of the June 2024 Policies), *and* Doc. 26, Ex. D at 4 (the APLS Rule, Ala. Admin. Code r. 520-2-2-.03(2)(j)), *with* Doc. 26, Ex. B at 16 (the selection criteria of the February 2024 Policies, which restricted not only obscene and

sexually explicit content, but also content including "sexual intercourse, sexual orientation, gender identity, or gender discordance."). Thus, before the Board's adoption of the June 2024 Policies, the library's purchase of some material would have been expressly prohibited on the face of the February 2024 Policies based on content, even if it was not obscene or sexually explicit. But under the new Selection Criteria, the only material that the library staff is categorically prohibited from acquiring is "obscene" or "sexually explicit" material advertised for minors, "as those terms are defined in state of federal law." Doc. 26, Ex. A at 17.

Beyond that, the new Selection Criteria policy simply defers curation decisions about the appropriateness of other material advertised for minors to the Library Director "in the exercise of common sense and professional judgment, and in compliance with any applicable laws and any relevant standards, guidance or policies adopted by the Board of Trustees." *Id.* This provision further conforms the Board's Selection Criteria to the APLS rule; instead of setting out content-based restrictions (other than for obscene and sexually explicit material), the APLS rule requires that local library policies prevent the acquisition of "other material deemed inappropriate for children or youth." Ala. Admin. Code r. 520-2-2-.03(2)(h); Doc. 26, Ex. D at 4. The Selection Criteria of the Board's June 2024 Policies answers this mandate. Recognizing that *someone* must be responsible for making the determination of appropriateness (the APLS rule doesn't specify who), the Selection Criteria policy designates the Library Director as that person, and mandates that she exercise her discretion "in compliance with any applicable laws," which would include the

Constitution. Thus, *on its face*, the Selection Criteria policy actually prohibits the Library Director from exercising this discretion unconstitutionally.

Thus the new Selection Criteria policy is demonstrably different than the previous one in very substantive ways.

### ***B. The new Reconsideration Policy and Standards Resolution establish a meaningful administrative process for the Plaintiffs to challenge the removal of books and other material, but which they have not utilized.***

In addition to providing new and different Selection Criteria, the June 2024 Policies also substantially alter the Board's previous reconsideration policy, which omitted any procedure for challenging the *removal* of books. In its June 2024 Policies, the Board created an administrative remedy and established explicit procedures for aggrieved patrons to request reconsideration a book's removal. *Compare* Doc. 26, Ex. A at 36 (the Reconsideration Policy under the June 2024 Policies), *with* Doc. 26, Ex. B at 36 (reconsideration under the February 2024 Policies, which only applied "[i]f a complaint is made about certain materials in the library's collection"). Before adoption of this new Reconsideration Policy, the library did not have any procedure, written or otherwise, by which patrons could challenge the *removal* of a book. Now it does.

At its June 24 meeting, in addition to the new Selection Criteria and the Reconsideration Policy, the Board also adopted a self-regulating resolution establishing standards to govern the Board's handling of appeals of denials of reconsideration (the "Standards Resolution"). Doc. 26 ¶ 43 and Ex. G. The Standards Resolution reiterates the Library Director's responsibility for collection development

and acknowledges the Library Director's "broad discretion" to curate the collection and protect minors from material he or she deems inappropriate for children or youth. Id. ¶ 45 and Ex. G; *see United States v. American Library Assn., Inc.,* 539 U.S. 194, 204 (2003) (plurality opinion) ("To fulfill their traditional missions, public libraries must have broad discretion to decide what material to provide to their patrons."); *see also id.* at 220 (Stevens, J., dissenting on other grounds, but "agree[ing] with the plurality" that a local public library's use of internet filtering software "as a means of curtailing children's access to Internet Web sites displaying sexually explicit images" is "neither inappropriate nor unconstitutional.")

The Standards Resolution demonstrates the Board's substantial deference to the Library Director's professional curation decisions. To explain how the Standards Resolution works, it is helpful to consider its operation in the context of a few hypotheticals. First, assume the removal of a controversial book from the library collection during the weeding process. Assume, then, that one of the Plaintiffs, perhaps Ms. Diamond, upset about the book's removal, files a request for reconsideration under the new Reconsideration Policy (previously she had no administrative recourse). If upon reconsideration the Library Director ultimately agrees with Ms. Diamond, deems the book *not* inappropriate for children or youth, and reacquires the book for the library, the matter is concluded (the Reconsideration Policy prohibits repetitive requests for reconsideration). Now consider the scenario of a library patron who discovers a book in the children's section that he or she finds offensive and seeks to have the book removed. He files a request for reconsideration

(of the book's acquisition), which is denied by the Library Director upon finding that the book does not violate the Selection Criteria. On appeal, if the Board disagrees (even unanimously) with the Library Director's decision to retain the book, the Board may not order the book removed from the library's collection, only that it be moved from the children's section. *See* Doc. 26, Ex. G ¶ 2. The only allowable circumstance under which the Board may completely remove material the Library Director has deemed worthy of keeping in the collection would be the Library Director's defiant refusal to move the book to the adult section, where, under the Library's Borrowing Policies, it may be still be accessed by minors with parental authorization. *See* Doc. 26, Ex. A at 5 (the Library Cards for Minors policy).

Thus, operating together, the Reconsideration Policy and the Standards Resolution ensure substantial deference to the Library Director's professional judgment to curate the library collection. Moreover, they absolutely prohibit the removal of books from the library that the Library Director, exercising his or her discretion "in compliance with any applicable laws," Doc. 26, Ex. A at 17, deems not to be obscene, sexually explicit, or inappropriate for children or youth. The Amended Complaint contains no allegation that the Plaintiffs have availed themselves of this new administrative remedy, much less exhausted it.

## STANDARD OF REVIEW

This Motion to Dismiss for lack of subject-matter jurisdiction is a facial attack on the sufficiency of the Amended Complaint. "A facial attack [under Rule 12(b)(1)] questions the sufficiency of the pleading and the plaintiff enjoys similar safeguards

to those provided when opposing a motion to dismiss under ... Rule ... 12(b)(6)." *Melvin v. Troy Univ.*, 609 F. Supp. 3d 1262, 1266 (M.D. Ala. 2022) (Thompson, J.) (first alteration in original) (quoting *Whitson v. Staff Acquisition, Inc.*, 41 F. Supp. 2d 1294, 1296 (M.D. Ala. 1999) (Thompson, J). Thus the Court "accepts the plaintiff's allegations as true, construes them most favorably to the plaintiff, and will not look beyond the face of the complaint." *Id.* (citations omitted). "The burden of establishing a federal court's subject-matter jurisdiction, once challenged, rests on the party asserting jurisdiction." *Whitson*, 41 F. Supp. at 1295-96 (citing *Thomson v. Gaskill,* 315 U.S. 442, 445 (1942), and *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953 (1980)).

## **ARGUMENT**

"The most notable—and most fundamental—limits on the federal 'judicial Power' are specified in Article III of the Constitution, which grants federal courts jurisdiction only over enumerated categories of 'Cases' and 'Controversies.' U.S. Const. art. III, § 2. This case-or-controversy requirement comprises three familiar 'strands': (1) standing, (2) ripeness, and (3) mootness." *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (citing *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011)). The Board seeks dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) based on all three strands.

## I. The Plaintiffs' claims as to the February 2024 Policies are moot.

Because the Amended Complaint continues to articulate all claims against policies that are no longer in effect, the Board starts with mootness. "Even if a suit presented a live controversy when filed, if events occur subsequent to the filing of the suit that deprive a court of the ability to provide the plaintiff with meaningful relief, then the case is moot and must be dismissed for lack of jurisdiction." *S. Miami Holdings, LLC v. F.D.I.C.*, 533 F. App'x 898, 902 (11th Cir. 2013). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. … [P]ut another way, a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.* (quotation marks and citations omitted).

In this lawsuit, Plaintiffs seek an order enjoining the Board from enforcing the February 2024 Policies and declaring that they are "unconstitutional, void, and of no effect." Doc. 26, at 30, ¶¶ a. and c. These claims, as against the February 2024 Policies, are moot. The Board's adoption of the June 2024 Policies (in response to the APLS's amended rule) effectively rescinded and superseded the previous policies attacked in the Plaintiffs' original Complaint. Having been superseded by materially different policies, as explained above, the February 2024 Policies will not be enforced, even absent any order of this Court; they are no longer in effect. Therefore, with respect to the February 2024 Policies, this Court cannot afford meaningful relief, and the claims as to the those policies should be dismissed as moot. *See Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1282 (11th Cir. 2004).

To be sure, when a defendant voluntary ceases a challenged practice, the defendant generally bears the burden of persuading the court that the conduct could not reasonably be expected to occur again. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007). But when the defendant is a governmental body, "there is a presumption that the government will not later resume the action, so the *plaintiff bears the burden* of showing that there is a reasonable expectation that the government will reverse course and reenact the allegedly offensive policy." *Parnell v. Sch. Bd. of Lake Cnty., Fla.*, 685 F. Supp. 3d 1339, 1351 (M.D. Fla. 2023) (quoting *Walker v. City of Calhoun*, 901 F.3d 1245, 1270 (11th Cir. 2018)) (quotation marks and citation omitted) (emphasis added).

The Eleventh Circuit considers three factors to determine whether a such a reasonable expectation exists:

> (1) "whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate our jurisdiction," i.e., by examining "the timing of the repeal, the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it"; (2) "whether the government's decision to terminate the challenged conduct was 'unambiguous,' " i.e., "whether the actions that have been taken to allegedly moot the case reflect a rejection of the challenged conduct that is both permanent and complete"; and (3) "whether the government has consistently maintained its commitment to the new policy or legislative scheme."

*Parnell*, 685 F. Supp. 3d at 1351 (quoting *Schultz v. Alabama*, 42 F.4th 1298, 1321 (11th Cir. 2022), quoting in turn *Walker*, 901 F.3d at 1270)). All of these factors weigh against finding a reasonable expectation that the Board will reenact the previous policies.

First, as explained above, the change to the policies resulted from the Board's genuine desire to continue receiving state funding pursuant to the APLS's administrative rule change making state funding conditional upon the Board's adoption of certain policies. The new policies closely track the language of the APLS rule to ensure the Board's continued eligibility for state funding, not to manipulate the Court's jurisdiction. The burden is on the Plaintiffs to show otherwise.

Second, the Board's decision to terminate the February 2024 Policies and adopt the June 2024 Policies was unambiguous—that is, it reflects a rejection of the previously challenged conduct that is both permanent and complete. *Id.* For example, rather than categorically prohibiting non-obscene, non-sexually explicit material based on content, the new Selection Criteria policy simply defers to the Library Director to decide whether material is inappropriate for children or youth in the director's "exercise of common sense and professional judgment." Doc. 26, Ex. A at 17. Moreover, the Reconsideration Policy sets out a clear procedure by which a person aggrieved by the removal of a book deemed inappropriate may request, and be afforded, complete relief (i.e., return of the book to the library shelves). Doc. 26, Ex. A at 36. And, by virtue of the new Standards Resolution, the Board has constrained itself to sustain the discretionary decision of the Library Director to retain a book that has been challenged or removed, even if the Board finds the book to be inappropriate for children or youth, as long as the book is moved to the adult section of the library, *see id.*, where it can be checked out by minors with the permission of a parent or guardian, *see* Doc. 26, Ex. A at 5.

Finally, the Board is compelled by the new APLS rule to consistently maintain its commitment to the new policies, lest it forfeit state funding. Consequently, the claims as to the February 2024 Policies should be dismissed as moot.

## II. The Plaintiffs' claims as to the June 2024 Policies are not ripe.

With respect to the claims challenging the June 2024 Policies, this Court lacks jurisdiction because they are not yet ripe for judicial review.

Ripeness involves both constitutional and prudential concerns. "In some circumstances, although a claim may satisfy constitutional requirements, prudential concerns 'counsel judicial restraint.'" *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) (citation omitted). Whether a claim is ripe for judicial review depends on whether the claim presented is "of sufficient concreteness to evidence a ripeness for review." *Id.* In a ripeness inquiry, the Court must make a determination of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Id.* "When a plaintiff is challenging a governmental act, the issues are ripe for judicial review if "a plaintiff ... show[s] he has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act." *Id.* (alteration in original) (citation omitted). "While it is true that [] review of a suit's ripeness is at its most permissive in cases concerning putative violations of the First Amendment, that requirement [of a direct injury as the result of that act] may not be ignored." *Id.* And, when a Court is reviewing actions by administrative agencies, "it is hornbook law that courts must exercise patience

and permit the administrative agency the proper time and deference for those agencies to consider the case fully." *Id.*

Unlike the previous policies, the June 2024 Policies challenged by the Plaintiffs do not, on their face, restrict the Plaintiffs' access to any constitutionally protected material based on content. The only content-based restrictions in the text of the Selection Criteria are for material advertised for minors that is (1) obscene or (2) sexually explicit.

First, the Plaintiffs acknowledge that obscenity is not constitutionally protected. Second, local public libraries do not violate the Constitution by restricting minors' access to "sexually explicit" material, either. *See American Library Assn., 539 U.S. at 220* (Stevens, J., dissenting on other grounds, but agreeing with the plurality that it is "neither inappropriate nor unconstitutional" for a local library to use Internet filtering software "as a means of curtailing children's access to … sexually explicit images."). Beyond those two permissible content-based restrictions, all the Selection Criteria policy does on its face is designate the Library Director as the person charged with discretion to determine whether such material is otherwise inappropriate for children or youth. It even requires the Library Director to exercise this discretion "in compliance with any applicable laws" (which would include the First and Fourteenth Amendments).

Because the Selection Criteria policy does not, itself, discriminate impermissibly based on content, it cannot be said to have caused the injuries any of the Plaintiffs allege they have suffered. Whether the Library Director has exercised

her discretion under the Selection Criteria unconstitutionally, as applied to these Plaintiffs, may be the subject of another lawsuit, but this lawsuit is a facial challenge to the Selection Criteria policy itself. The issues raised by the Plaintiffs, therefore, are not fit for judicial review.

Moreover, the Plaintiffs have not established a sufficient hardship if the Court withholds consideration of these issues in this lawsuit. Based on the pleadings, it appears the Plaintiffs have not even attempted to avail themselves of the reconsideration procedures established by the new Reconsideration Policy. Therefore, they themselves are to blame for any hardship they may feel in not being able to check out their preferred reading material, especially since the Selection Criteria policy was adopted over two months ago.

"One of the 'basic rationale[s]' for the ripeness doctrine is 'to protect [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' Nat'l Advert. Co., 402 F.3d at 1339. In National Advertising Company, id., a billboard company challenged the City of Miami's sign permitting procedure. The Eleventh Circuit held that the plaintiff billboard company's claim was not ripe because it "never properly pursued its claim through the administrative process that the City's zoning ordinance made available to them. … [I]t failed to obtain a final denial of its applications." In the same way, the Plaintiffs here have not pursued their claims through the reconsideration process established by the Board. Until they do, their claims are not ripe and should be dismissed.

## III. The Plaintiffs lack standing because they failed to allege a sufficiently concrete injury in fact.

The Board also seeks dismissal for lack of standing. Where, as here, a defendant challenges the plaintiffs' standing based on the face of the pleadings, "the district court takes the allegations as true in deciding whether to grant the motion." *Gardner*, 962 F.3d at 1340 (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). To survive a motion to dismiss for lack of standing, the plaintiffs' complaint must allege (1) "an 'injury in fact'—an invasion of a legally protected interest that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical' "; (2) "a 'causal connection' between [the plaintiff's] injury and the challenged action of the defendant"; and (3) a "likel[ihood], not merely speculati[on], that a favorable judgment will redress [the] injury." *Id.* at 1338 (quoting *Lewis v. Governor of Ala.,* 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc), quoting in turn *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). And "[b]ecause standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting." *Id.* at 1338–39 (quoting *Lewis*, 944 F.3d at 1296) (alteration in original).

Article III standing is to be determined as of the filing of the Plaintiffs' complaint, even though the policies they challenge have since been superseded. *See Keister v. Bell*, 29 F.4th 1239, 1256–57 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 1020, 215 L. Ed. 2d 188 (2023) (citing *Focus on the Fam. v. Pinellas Suncoast Transit Auth.,* 344 F.3d 1263, 1275 (11th Cir. 2003)). The burden is on the Plaintiffs to establish the

elements of standing—injury in fact, causation, and redressability—at each stage of the litigation. *Trichell v. Midland Credit Mgmt., Inc.,* 964 F.3d 990, 996 (11th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. at 651). Thus, at this stage, the Amended Complaint should be dismissed if it fails to allege facts that plausibly establish standing. *See id.* (citations omitted). The Plaintiffs' Complaint fails to meet that burden and should therefore be dismissed for lack of jurisdiction.

The "'[f]irst and foremost' of standing's three elements is injury in fact." *Gardner*, 962 F.3d at 1341 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016), quoting in turn *Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 103 (1998)). The Plaintiffs have failed to meet their burden to establish standing because they failed to allege a constitutionally cognizable injury in fact.

The Complaint in this case states only facial challenges to the policies. Moreover, the Complaint seeks only prospective relief; it does not ask the Court, for example, to order the return of any books that may have already been removed.

So, what injury, exactly, are the Plaintiffs alleging? In the first four counts (overbreadth and content discrimination), the Plaintiffs allege as their injury that the policies "restrict [their] access to a substantial amount of constitutionally protected material that is not obscene." Doc. 26 ¶¶ 66 (Count I), 72 (Count II), 79 (Count III), and 85 (Count IV). Specifically, they say, the policies "unconstitutionally interfere[] with [their] right to check out and read" books and other material "protected by the First Amendment." 67 (Count I), 73 (Count II), 80 (Count III), and 86 (Count IV). But

"[t]he naked recitation of a constitutional claim isn't sufficient; if it were, every § 1983 plaintiff would, by definition, have standing to sue." *Gardner*, 962 F.3d at 1341.

An injury in fact sufficient to support standing must first be an "invasion of a legally protected interest" that is "concrete" and "actual or imminent." *Gardner*, 962 F.3d at 1338. That "interest must consist of obtaining compensation for, or preventing, the violation of a *legally protected right*." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980–81 (11th Cir. 2005) (citing *Vermont Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 772 (2000)) (emphasis added). In short, then, if the Amended Complaint is to be read as supporting standing at all, it must be read as alleging that the Autauga-Prattville Public Library has a constitutional obligation to supply the Plaintiffs with their books of choice, lest it interfere with their supposed "legally protected right" to "check out and read" their preferred material.

But does the library have that constitutional obligation?

The Plaintiff's alleged injury in fact is insufficient to confer standing because it is neither a "concrete" nor "actual or imminent" interference with a legally protected right.

***A. The injury is not sufficiently concrete to confer standing.***

In determining whether an intangible harm, such as the interference alleged here, constitutes a "concrete" injury in fact, the Supreme Court has instructed the courts to apply the context of history and tradition. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

> Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016). Applying that analysis here, the injury-in-fact question is whether the challenged policies' alleged interference with the Plaintiffs' claimed "right to check out and read" books from a public library is closely related to any harm traditionally regarded as giving rise to a lawsuit. No court throughout American history has ever held that the Constitution guarantees a right to check out and read books from a public library at taxpayer expense.[1] There is no such federal right. Nor has the Alabama Legislature obligated the establishment of public libraries in the state to guarantee any such "right." *See* Ala. Code § 11-90-1, -4 (authorizing, but not requiring, county and municipal governing bodies to establish free public libraries). Because interference with the claimed "right to check out and read" books from the public library bears no relationship to a historically and traditionally recognized harm, it is not an injury concrete enough to confer standing.

[1] In fact, the concept of a "public library" didn't even exist when the First Amendment was ratified in 1791 and for nearly half a century thereafter. See Marysia Wlazlo, The Tale of the E-Book: Library Lending's Newest Edition, 63 Syracuse L. Rev. 273, 277 and n.24 (2013) (citing Laura Gasaway, Libraries and Copyright at the Dawn of the Twentieth Century: The 1909 Copyright Act, 11 N.C. J. L. & Tech. 419, 431 (2010)).

### *B. The injury is not sufficiently "actual or imminent" to confer standing.*

Not only do the Plaintiffs' allegations of injury lack sufficient concreteness, the Amended Complaint also fails to sufficiently allege that the injury is either "actual or imminent." First, although some allegations may appear at first to state "actual" harm—that a few books reserved by one or more Plaintiffs are no longer available for check-out—a closer examination reveals that none of those allegations actually states that the books were removed *because of* their content or on account of the challenged policies. In those allegations, Plaintiffs only state that they wanted the books, the books are now unavailable in the online card catalog, and the books also happen to fall within the scope of the policy. Thus the Plaintiffs haven't sufficiently alleged actual harm.

In any event, the Plaintiffs seek only prospective relief, so they must show the alleged injury is *imminent*. While the Complaint elaborates at length on the Plaintiffs' particular tastes in reading material, no allegation states with the requisite specificity that the alleged injury is imminent. It is not enough for standing purposes to merely plead that the challenged policies may deprive the Plaintiffs of the availability of books they wish to check out and read (whether because the library may remove the books in the future or decline to acquire them in the first place. The face of the Complaint must show that the injury is imminent.

In a case involving a challenge to the removal of a books from a school library, the Eleventh Circuit held that the plaintiffs there lacked standing (with respect to all but one of the removed books) because they did not state "with sufficient specificity

their plans for accessing the [removed] books … . They [had] not given any indication of some fixed period of time in the reasonably foreseeable future during which they want to use the books." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.,* 557 F.3d 1177, 1197 (11th Cir. 2009) (emphasis added). The Court did find standing, however, with respect to one removed book because one of the plaintiffs had averred that he anticipated checking it out "'when school resumes on August 14, 2006'—a *specific intention* pegged to a sufficiently *fixed period of time*." Id., 557 F. 3d at 1194 (emphasis added). The Court reiterated the well-settled law that a plaintiff's "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.*, 557 F.3d at 1191 (quoting *Lujan*, 504 U.S. at 564) (internal quotation marks omitted).

> Just as the *Lujan* plaintiffs' general desire to have wildlife preserved for their viewing someday was insufficient to establish an imminent injury in fact, the general desire of the plaintiffs in this case to have the other books in the … series kept in the school library for their use someday is insufficient as well. In both cases it is not enough to have an injury in fact. The injury must be imminent, and in both cases it was not.

*Id.* Here, as with all but one of the books in *Miami-Dade*, the plaintiffs' allegations "merely establish a free-floating desire to access" the books in question, "a desire untethered to any intended action during any reasonably specific period of time." *Id.* at 1196. The Complaint contains only vague allegations that the Plaintiffs had "planned" to check out books that no longer appear in the library's online catalogue, Doc. 26 ¶ 41, and that they "plan" (some day) to read and check out materials that

fall within the sweep of the challenged policies. Doc. 26 ¶¶ 52-60. The Plaintiffs here thus failed to allege that the injury was imminent. As the Eleventh Circuit said:

> Intricate drafting is not required to describe a threatened injury. Plain English and clear language work best. There is either an imminent injury or there is not. If there is not, there is no standing. If there is an imminent injury, then there may be standing. All the plaintiff has to do is describe the threatened injury and specify why it is imminent. The penalty for failing to do so is dismissal for lack of standing.

*Miami-Dade*, 557 F.3d at 1197.

Moreover, an injury is not imminent if it is "conjectural or hypothetical." *Gardner*, 962 F.3d 1338; *see also Miami-Dade*, 557 F.3d at 1190. Yet the Plaintiffs' Complaint is riddled with conjecture and suffers from fatal hypotheticals. First, the Plaintiffs acknowledge that the policies do not mandate the immediate identification and removal of all books falling within their scope; rather, books may be removed in one of two instances: (1) as a result of "weeding"—"a common library practice of regularly reviewing and evaluating books and other library materials to determine if they should remain in the collection," Doc. 26 ¶ 36, and (2) as a result of a library patron's challenge (i.e., complaint), followed by a review and written recommendation of a review committee as to whether the material complies with the selection criteria, Doc. 26 ¶ 40. In the first instance, books favored by the Plaintiffs are merely "*subject to* removal from [the library's] collection through the incorporation of the Selection Criteria policy into the weeding policy." Doc. 26 ¶ 37 (emphasis added). The Plaintiffs do not allege with any specificity that the next "weeding" is imminent, or if any of their favored books will even come up in the next weeding cycle. In the second

instance, books favored by the Plaintiffs may not be challenged in the reasonably foreseeable future and, even if they are, the review committee and Library Director very well may find that they are "[a]ge-appropriate materials concerning biology, human anatomy, or region" exempt from removal. Doc. 25, Ex. A at 17.

Given the Plaintiffs' (correct) allegations that one of these contingencies—identification through weeding or the processing of a complaint—must occur before a book is removed under the challenged policies, the alleged injury is not sufficiently imminent to satisfy standing. And that lack of imminency explains the Plaintiffs' resort to conjecture and hypotheticals.

Thus, on its face, the Complaint not only lacks allegations establishing that injury is imminent, it contains allegations positively demonstrating that it's not. The alleged injury in fact is therefore insufficient to confer standing on the Plaintiffs.

**CONCLUSION**

For the foregoing reasons—mootness, unripeness, and lack of standing—the Court should grant the Board's Motion to Dismiss.

Respectfully submitted,

*/s/Bryan M. Taylor*
Bryan M. Taylor (ASB 0390-Y81T)
Defendant's Counsel
Bachus Brom & Taylor LLC
3125 Blue Lake Drive, Suite 101
Birmingham, AL 35243
(205) 970-7775
btaylor@bachusbrom.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Bryan M. Taylor*
Bryan M. Taylor
Counsel for Defendant Autauga-Prattville
Public Library Board of Trustees